UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMON D. SUTTLES, | ) |
| | ) Case No. EDCV 07-00041-JCR |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) AND ORDER |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Jasmon D. Suttles ("Plaintiff") seeks review of the decision of Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, denying his application for Supplemental Security Income ("SSI") benefits. As discussed below, the Court[2] reverses and remands the decision of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Thus, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart. *See* Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the
(continued...)

1

Commissioner.

## I. PROCEEDINGS

Plaintiff filed a Complaint on January 19, 2007, seeking review of the Commissioner's denial of his application for SSI benefits. On August 8, 2007, the Commissioner filed an Answer and the certified Administrative Record ("AR"). On September 25, 2007, the parties filed a Joint Stipulation ("JS") in accordance with the Court's Case Management Order. Thus, this matter is now ready for decision.

As the Court advised the parties in its Case Management Order, the decision in this case will be made based on the pleadings, the AR, and the JS filed by the parties. In accordance with Federal Rule of Civil Procedure 12(c), the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

This Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law.

## II. BACKGROUND

On August 25, 2004, Plaintiff filed an application for SSI benefits. (AR at 53-54.) On November 22, 2004, the application was denied. (*Id.* at 24.) On February 17, 2005, the application was reconsidered and again denied. (*Id.* at 35.) On May 8, 2006, a hearing was held before Administrative Law Judge ("ALJ") F. Keith Varni. (*Id.* at 200-12.) On June 28, 2006, the ALJ issued an unfavorable decision. (*Id.* at 16-20.) On August 1, 2006, Plaintiff filed a Request for Review

---

[2](...continued)
Magistrate Judge conducting any and all proceedings in the instant matter and ordering the entry of final judgment.

of the Hearing Decision, and on November 15, 2006, this request was denied by the Appeals Council. (*Id.* at 4, 11-12.)

On January 19, 2007, Plaintiff timely filed the instant action, seeking judicial review of the denial of benefits by the Commissioner.

## III.   DISPUTED ISSUE

Plaintiff raises the following issue as ground for reversal or remand: Whether the ALJ erred in finding that Plaintiff's mental impairment did not last or was not expected to last twelve months. (JS at 3.)

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but "less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted).

The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). However, a district court cannot affirm an ALJ's disability determination based on reasons and evidence the ALJ does not discuss. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The ALJ has a duty to fully and fairly

develop the record even when, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).

## V. DISCUSSION

### A. Severity and Duration of Plaintiff's Mental Impairments

In his decision, the ALJ found that Plaintiff had "no restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace . . . with no episodes of decompensation, each of extended duration. . . . [Plaintiff] does not have a severe mental impairment which was expected to last a continuous period of 12 months." (AR at 18.) The ALJ based this conclusion on the consultative report of Dr. Reynaldo Abejuela and two medical consultant reviews from November 2004 and February 2005 of Plaintiff's medical records. (*Id.* at 17-18.)

Plaintiff contends that the ALJ's interpretation of Dr. Abejuela's opinion was in error because the opinion was contingent upon Plaintiff receiving mental health treatment, which Plaintiff claims he was unable to receive due to lack of medical insurance. (JS at 4.) Plaintiff also contends that the ALJ failed to adequately determine the onset date of Plaintiff's mental impairment. (*Id*. at 5.)

The Commissioner contends that: (1) Dr. Abejuela opined that Plaintiff, if he received mental health treatment, would get better in less than one year; (2) Plaintiff sought no mental health treatment; (3) Plaintiff reported signs of improved psyche; and (4) Plaintiff produced no evidence showing that he had a mental impairment that satisfied the 12-month disability duration requirement. (*Id.* at 7.)

#### 1. Dr. Abejuela's Report

The record indicates that on November 4, 2004, Dr. Abejuela performed a complete psychiatric evaluation of Plaintiff. (AR at 166.) Plaintiff provided the information for the evaluation and Dr. Abejuela regarded Plaintiff as a fair historian. (*Id.*) At the time of the evaluation, Plaintiff was not seeing a

psychiatrist nor taking psychiatric medication. (*Id.* at 171.) Plaintiff reported physical pain, depression, anxiety, nightmares, and flashbacks, all relating to an incident in July 2004 when he sustained approximately ten to twelve gunshot wounds. (*Id.* at 166, 170.) Plaintiff also complained of decreased sleep, low energy, decreased weight and appetite, and feelings of helplessness, worthlessness, and hopelessness. (*Id.* at 167.) Plaintiff did not report any suicidal or homicidal ideation. (*Id.*) Dr. Abejuela's objective findings were that Plaintiff was depressed, anxious, and preoccupied with nightmares and flashbacks about the shooting incident that caused his injuries. (*Id.* at 171.) Dr. Abejuela found that Plaintiff's "occupational and social functioning [were] impaired." (*Id.*) Dr. Abejuela also found a "mental restriction in [Plaintiff's] daily activities" and that Plaintiff's "concentration, persistence and pace are impaired because of depression and anxiety." (*Id.*) Dr. Abejuela's prognosis of Plaintiff was fair, and he stated that "[i]f [Plaintiff] would get some psychotherapy or medication, [Dr. Abejuela] would expect that [Plaintiff] should get better in less than a year." (*Id.* at 172.)

2.   Relevant Medical Consultation Reports

On November 18, 2004, and February 11, 2005, non-examining medical consultation reports were conducted based upon reviews of Plaintiff's physical and mental health records. The non-examining medical consultative reports from November 2004 and February 2005 reference Dr. Abejuela's psychiatric exam. (*Id.* at 196, 197.) The November 18, 2004, report[3] found that Plaintiff "can do simple level non public tasks [with] no adaptive limitations." (*Id.* at 196.) On November 18, 2004, a Mental Residual Functional Capacity ("Mental RFC")

---

[3] The Court was unable to determine the doctor who conducted the November 18, 2004, report from the AR.

Assessment and a Psychiatric Review Technique were also conducted.[4] (*Id.* at 177-94.) The Mental RFC Assessment reported Plaintiff to be moderately limited in his abilities to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public. (*Id.* at 177-78.) The Psychiatric Review Technique reported Plaintiff to have an anxiety-related disorder, but one that did not meet the criteria of the 12.06 Listing for a per se disability.[5] (*Id.* at 181, 186.) In the February 11, 2005, report, Dr. Diane Rose agreed with a prior non-examining medical consultation report, which determined that Plaintiff would not have a severe physical impairment by July 2005.[6] (*Id.* at 197.)

        3.    <u>Analysis</u>

An individual is disabled within the meaning of the Social Security Act when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.909. The claimant has the burden of establishing a prima facie case of disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (*citing* 42 U.S.C. § 423(d)(5); 20 C.F.R § 416.912(a)).

---

[4] The Court was unable to determine from the AR which doctor or doctors conducted the Mental RFC Assessment or the Psychiatric Review Technique.

[5] The Commissioner's Listing of Impairments sets forth certain impairments that are presumed to be of sufficient severity to preclude the performance of work. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a). If a claimant has an impairment that meets or equals a Listed Impairment, disability is presumed and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.926(b); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1477 (9th Cir. 1989).

[6] Dr. Rose's report affirms a prior physical impairment determination performed by Dr. Karolyn R. Mauro. (AR at 175-76.)

Disability claims are evaluated according to a five-step procedure. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step two, the ALJ must determine whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that meet a duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is any impairment or combination of impairments that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "The 'ability to do basic work activities' is defined as 'the abilities and aptitudes necessary to do most jobs.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see* 20 C.F.R. §§ 404.1521(b), 416.921(b). The duration requirement is met if the impairment is expected to result in death, or lasts or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. If necessary, the Commissioner will develop a complete medical record of the claimant's alleged disability unless the disability began less than twelve months before the disability benefits application was filed. 20 C.F.R. § 416.912(d).

Here, Plaintiff suffered his injury on July 21, 2004, and Dr. Karolyn R. Mauro expected him to make a full physical recovery by July 2005. (AR at 17, 176.) In November 2004, Dr. Abejuela conducted a psychiatric evaluation of Plaintiff. *See supra* Part V.A.1. Aside from Dr. Abejuela's evaluation, there are no additional mental health examinations of Plaintiff. In May 2006, during a hearing before the ALJ, Plaintiff testified that he was still experiencing psychological problems due to his injury. (AR at 207-10.) The ALJ, with the sparse medical evidence presented to him, relied on Dr. Abejuela's report and the medical consultative review reports in making his disability determination. (*Id.* at 18.) The ALJ found Plaintiff's impairments testimony had too many inconsistencies to be credible. (*Id.*) Specifically, the ALJ noted that Plaintiff was able to live a normal lifestyle because he "took care of his personal needs, did

household chores, shopped, drove his car, watched television and socialized with friends and family members." (*Id.*)  The ALJ concluded that these findings did "not permit reliance on [Plaintiff's] statements." (*Id.*)  Based on these findings, the ALJ found that Plaintiff did "not have a severe mental impairment which was expected to last a continuous period of 12 months," and noted that Dr. Abejuela expected Plaintiff to "greatly [improve] with psychotherapy and medications." (*Id.*)

### *a.     Severity of Plaintiff's Mental Impairments*

The Court finds that the ALJ did not clearly determine whether Plaintiff's mental impairments were severe.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ states that Plaintiff "does not have a severe mental impairment which was expected to last a continuous period of 12 months." (AR at 18.)  From the ALJ's statement, the Court cannot determine, for example, whether: (1) the ALJ found that Plaintiff's impairment was not severe *and* did not meet the disability duration requirement; (2) the ALJ found that Plaintiff's impairment was severe *but* did not meet the disability duration requirement; or (3) the ALJ found that Plaintiff's mental impairment was not severe *because* it did not fulfill the disability duration requirement.  The ALJ does state that Plaintiff has "no restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace . . . with no episodes of decompensation, each of extended duration" (AR at 18), but fails to make a specific finding as to whether Plaintiff's mental impairments are severe.

Accordingly, on remand, the ALJ must clearly determine if Plaintiff's mental impairments are severe.

///
///
///

b.  *Duration of Plaintiff's Mental Impairments*

  i.  <u>*Plaintiff's Ability to Obtain Mental Health Treatment*</u>

Plaintiff argues that he was unable to receive treatment for his mental impairments because he did not have private medical insurance and was denied Medi-Cal benefits. (AR at 208; JS at 5.) Plaintiff stated that he went to the San Bernardino County facilities for treatment but could not tolerate the long wait because he was in pain. (AR at 80; JS at 5.) The ALJ noted that "[a]t the hearing, [Plaintiff] testified that his insurance would not authorize [mental health] treatment, however, there is no indication in the record of such a request or denial." (AR at 18.) Ultimately, Plaintiff contends that because he did not have ready access to mental health treatment, he was unable to meet Dr. Abejuela's contingent prognosis of mental health improvement in less than a year. (JS at 4.) Therefore, Plaintiff argues that he fulfilled the 12-month disability duration requirement. (JS at 5.) The Court disagrees with Plaintiff's argument.

Under Ninth Circuit law, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). "It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Id*. at 322 (*quoting Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)); *see Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so.") However, Social Security Ruling ("SSR") 82-59[7] delineates the circumstances when the Commissioner can deny benefits because of

---

[7] Social Security Rulings are binding on ALJs. *Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

the claimant's failure to follow prescribed treatment. *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). SSR 82-59 gives a listing of justifiable causes for failure to follow prescribed treatment. *See* SSR 82-59, 1982 WL 31384, at *3-*4 (1982). One justifiable cause is the unavailability of free community resources:

> *The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable.* Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the claimant's financial circumstances must be documented. Where treatment is not available, the case will be referred to [the vocational rehabilitation agency].

SSR 82-59, 1982 WL 31384, at *4.

The Court finds that the mental health treatment Dr. Abejuela recommended to Plaintiff was "reasonably available" within the community, as evidenced by Plaintiff's attempt to receive treatment from the San Bernardino County health facilities. (AR at 80.) The Court does not accept Plaintiff's claim that he was in too much pain to endure the long line at the treatment facility. On the contrary, as the ALJ noted, Plaintiff was able to live a normal lifestyle because he "took care of his personal needs, did household chores, shopped, drove his car, watched television and socialized with friends and family members." (*Id*. at 18.) The Court finds Plaintiff's claim of suffering from too much pain to wait for mental health treatment to be inconsistent with the performance of the aforementioned activities.

In addition, the Court finds that Plaintiff did not explore "all possible resources" for psychiatric treatment and that contacts with any such resources were

not documented. SSR 82-59, 1982 WL 31384, at *4. Plaintiff claims that he sought treatment at a county hospital on one occasion. (AR at 80; JS at 4.) The Court finds that this cannot be considered exploring "all possible resources" as mandated by SSR 82-59. As the ALJ noted, "[Plaintiff] testified that his insurance would not authorize [mental health] treatment, however, there is no indication in the record of such a request or denial." (AR at 18.) Plaintiff did not provide documentation of insurance denials or contacts with available resources. Therefore, the Court finds that the ALJ appropriately found that Plaintiff was not justified for failing to follow Dr. Abejuela's recommendation of psychotherapy or medications.

                          ii.     *Plaintiff's Onset and Ending Dates of Disability*

Plaintiff contends that if the ALJ used a disability onset date of July 2004 (the date of Plaintiff's injury) rather than an onset date of November 2004 (the date of Dr. Abejuela's prognosis), Plaintiff "would easily satisfy the 12-month duration requirement."[8] (JS at 5.)

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982). Both Plaintiff and the Commissioner bear a responsibility for developing the evidentiary record. 20 C.F.R. § 416.912(c)-(d). Before deciding that Plaintiff is not disabled, the Commissioner must develop a claimant's complete medical

---

[8] The Court notes that Plaintiff reported an onset date of August 7, 2004, for his anxiety. (AR at 69.) In addition, Plaintiff reported an onset date of September 10, 2004, for his depression and loss of appetite; an onset date of October 3, 2004, for his nightmares; and an onset date of January 10, 2005, for his lack of sleep. (*Id*. at 74.) As will be discussed, the Court finds that the ALJ did not clearly enunciate which onset date of disability was utilized in determining Plaintiff's duration of disability.

11

history for at least the twelve months preceding the month that the claimant files his application. 20 C.F.R. § 416.912(d). When the ALJ receives evidence from a medical source that is inadequate to determine disability, the Commissioner must seek additional evidence or clarification from the medical source when a report from a medical source contains a conflict or ambiguity that must be resolved. 20 C.F.R. § 416.912(e)(1).

The ALJ found that Plaintiff "does not have a severe mental impairment which was expected to last a continuous period of 12 months." (AR at 18.) The ALJ does not indicate which onset date he utilized in making this determination,[9] nor does the ALJ indicate when Plaintiff's mental impairments would improve if Plaintiff obtained mental health treatment. The language of Dr. Abejuela's prognosis is also unclear as to whether Plaintiff would improve within a year of

---

[9] The ALJ also stated the following in his decision: "[Plaintiff's] attorney requested that the [Plaintiff's] onset date be changed to February 1, 2006, a request which was denied. [The ALJ finds] this to be a completely arbitrary date and there is no supporting justification in the record, supporting such a change." (AR at 17.)
The ALJ fails to provide a cite as to where in the record this alleged request by Plaintiff's attorney can be located. From the Court's review of the record, it appears the ALJ may be referring to comments from Plaintiff's attorney made during the May 8, 2006, hearing. During that hearing, Plaintiff's attorney stated the following: "I would argue that during the period in question, this closed period of July [2004] through *February of '06* in light of the severity of the injury it's [sic], the closed period would be warranted." (AR at 211 (emphasis added).) Additionally, at the same hearing, Plintiff's attorney asked the following question of Plaintiff: "What were your greatest physical limitations do you think other than pain during this time? That were during the period we speak to from July of '04 until February of this year?" (AR at 209.)
The Court does not interpret the references to February 1, 2006, made by Plaintiff's attorney at the May 8, 2008, hearing to suggest that Plaintiff's attorney was requesting that the ALJ change the onset date of Plaintiff's disability to February 1, 2006. In any event, even if Plaintiff's attorney was making such a request, the record makes clear that the ALJ rejected the request. (AR at 17.)

1 July 2004, November 2004, or some other disability onset date.  (*See id.* at 172.)
2 The ALJ failed to clarify the exact time frame of Dr. Abejuela's contingent
3 prognosis that Plaintiff, by receiving psychotherapy or medication, would improve
4 in "less than a year."  Furthermore, Dr. Abejuela's prognosis of "less than a year"
5 is itself unclear.  "Less than a year" could mean as little as a day, or as much as
6 eleven months, less than a year.

7 Both the onset date and subsequent date of non-disability are necessary to
8 determine if Plaintiff satisfies the 12-month disability duration requirement.  As the
9 ALJ has a duty to develop a complete medical record, it was incumbent upon the
10 ALJ to clarify which onset date was used in making the disability determination
11 and to clarify Dr. Abejuela's prognosis.  Without such clarification, the Court is
12 unable to determine whether Plaintiff satisfied the duration requirement.[10]

### B.     Remand

The law is well established that the decision whether to remand for further
proceedings or simply to award benefits is within the discretion of the Court.  *See,
e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*,
888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.
1981).  Remand is warranted where additional administrative proceedings could
remedy defects in the decision.  *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497
(9th Cir. 1984).

---

[10]  To demonstrate the uncertainty, if the ALJ used an onset date of November 2004 and if Dr. Abejuela's November 2004 prognosis of improvement "in less than a year" was eleven months, Plaintiff would have failed to meet the duration requirement, because Plaintiff would have improved by October 2005, while the duration requirement would not have been met until November 2005. Conversely, if the ALJ used an onset date of July 2004 and if Dr. Abejuela's November 2004 prognosis of improvement "in less than a year" was eleven months, Plaintiff would have met the disability duration requirement in July 2005, because Plaintiff would not have improved until October 2005.

1  Here, the Court concludes that further administrative proceedings would
2  serve a useful purpose and remedy administrative defects. Thus, remand for
3  further proceedings is appropriate. During these remand proceedings, the ALJ
4  must determine if Plaintiff's mental impairments are severe, as required by step
5  two of the five-step Social Security disability analysis. 20 C.F.R. §§
6  404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds that Plaintiff's mental
7  impairments are severe, the ALJ must clearly determine if Plaintiff fulfills the 12-
8  month disability duration requirement. 20 C.F.R. §§ 404.1509, 416.909. The ALJ
9  must state which onset date is used in making the disability determination and
10 clarify Dr. Abejuela's prognosis that Plaintiff, if he received psychotherapy or
11 medication, would improve in "less than a year."

## VI.  ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED: April 24, 2008

_____
JOHN C. RAYBURN, JR.
UNITED STATES MAGISTRATE JUDGE